UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATASHA HILDA NELSON, CDCR #G-29865,<br><br>Plaintiff,<br><br>vs.<br><br>KATHLEEN ALLISON, Secretary, CDCR; CONNIE GIBSON, Director of Institutions; MARCUS POLLARD, Warden; RAQUEL BUCKEL, Chief Deputy Warden; EVERETT BENYARD, Associate Warden; E. GARCIA, Captain; MARY ANN GLYNN, Chief Executive Officer; L. COHEN, Senior Registered Nurse,<br><br>Defendants. | Case No.: 3:22-cv-00377-CAB-MDD<br><br>**ORDER**<br><br>**1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS [ECF No. 2]**<br><br>**AND**<br><br>**2) DIRECTING U.S. MARSHAL TO EFFECT SERVICE PURSUANT TO 28 U.S.C. § 1915(d) AND Fed. R. Civ. P. 4(c)(3)** |

Plaintiff Natasha Hilda Nelson, a transgender inmate incarcerated at Richard J. Donovan Correctional Facility ("RJD") in San Diego, California, has filed a pro se civil rights Complaint pursuant 42 U.S.C. § 1983.[1] *See* Compl., ECF No. 1. Plaintiff claims

---

[1] Because Plaintiff identifies as transgender and uses the feminine pronouns she/her, the Court will do the same. *See e.g.,* Compl. at 11.

1

California Department of Corrections and Rehabilitation ("CDCR") Secretary Kathleen Allison, CDCR Director of Institutions Connie Gibson, and RJD Warden Marcus Pollard, Chief Deputy Warden Raquel Buckel, Associate Warden Everett Benyard, Captain E. Garcia, Chief Executive Officer Mary Ann Glynn, and Senior Registered Nurse ("SRN") Cohen violated her First, Eighth, and Fourteenth Amendment rights in December 2019 and December 2020. *See id.* at 1–3. Plaintiff seeks $500,000 in both general and punitive damages as to each Defendant, and injunctive relief requiring adherence to proper Covid-19 prevention policies and religious accommodations for Wiccan and practitioners of the Northern Tradition (Odinists) at RJD. *See id.* at 18.

Plaintiff did not prepay the $402 civil filing fee required by 28 U.S.C. § 1914(a) at the time of filing, but instead has filed a Motion to Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a). *See* ECF No. 2.

### I. Motion to Proceed In Forma Pauperis

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $402.[2] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if she is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). However, a prisoner who is granted leave to proceed IFP remains obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, 577 U.S. 82, 84 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether her action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1), (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

---

[2] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $52. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2020). The additional $52 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 577 U.S. at 84.

In support of her IFP Motion, Plaintiff has submitted a copy of her CDCR Inmate Statement Report and a prison certificate authenticated by a RJD Accounting Officer and attesting as to her trust account activity pursuant to 28 U.S.C. § 1915(a)(2) and S.D. Cal. Civ. L.R. 3.2. *See* ECF No. 2; *Andrews*, 398 F.3d at 1119. These documents show although Plaintiff carried an average monthly balance of $348.05 and had $165.20 in average monthly deposits to her trust account during the six months preceding the filing of this action, she had an available balance of only $5.74 at the time of filing. *See* ECF No. 2 at 1, 3.

Therefore, the Court grants Plaintiff's Motion to Proceed IFP (ECF No. 2) and assesses a partial initial filing fee of $76.81 pursuant to 28 U.S.C. § 1915(b)(1), but declines to order the collection of that initial fee at this time because her prison certificate indicates she currently has "no means to pay it." *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's

IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered."). Instead, the Court directs the Secretary of the CDCR, or her designee, to collect the entire $350 balance of the filing fees required by 28 U.S.C. § 1914 and to forward them to the Clerk of the Court pursuant to the installment payment provisions set forth in 28 U.S.C. § 1915(b)(1).

**II.     Sua Sponte Screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b)**

   A.    Standard of Review

Because Plaintiff is a prisoner and proceeding IFP, her Complaint requires a preliminary screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.,* 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."

*Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

B.  Factual Allegations

Plaintiff divides her Complaints into three separate causes of action under Section 1983. Counts 1 and 2 relate to her exposure to and contraction of Covid-19 at RJD in December 2020. Count 3 involves free exercise and religious accommodations for her Wiccan faith arising in December 2019. *See, e.g.,* Compl. at 4–5 (Count 1); *id.* at 6–12 (Count 2); *id.* at 13–16.

1.  Count 1

In Count 1, Plaintiff alleges CDCR Defendants Allison and Gibson violated both her Eighth Amendment right to be free from cruel and unusual punishment and her Fourteenth Amendment right to equal protection when they authorized the transfer of inmates from the California Institution for Men ("CIM") and San Quentin State Prison ("SQSP") to RJD, which is "classified as a high risk medical and transgender facility," in November and early December 2020. *See* Compl. at 4. Plaintiff alleges Allison and Gibson did so "despite … advice and guidance from the Center for Disease Control and Prevention" ("CDC"), and in direct contravention of an order issued by California's Governor to "stop all transfers after [a] SQSP outbreak." *Id.* at 4–5. Plaintiff alleges RJD had "zero positive cases of Covid-19 among the inmate population" at the time, but Allison and Gibson knowingly ignored the risk and sanctioned the transfer of inmates from CIM, SQSP "and/or other Covid-19 hot spots" to RJD even after several transferees tested positive and without first placing them in isolation or quarantine. *Id.* at 5. As a result, Plaintiff, who is asthmatic and in a "high risk category," together with "hundreds" of other inmates and "numerous" correctional staff contracted the disease. *Id.* Plaintiff

alleges she suffered "intense anxiety," worsened asthma and depression, feared she was going to die, had difficulty breathing, and is now "showing signs of being a prediabetic." *Id.* Plaintiff contends Defendants Allison and Gibson acted with deliberate indifference to her health and safety, and violated her right to equal protection because they "stately publicly that they did these transfers to try to protect other inmates." *Id.*

### 2. Count 2

In Count 2, Plaintiff focuses on the RJD Defendants and alleges they too violated her Eighth Amendment rights by failing to enforce preventative correctional and health care policies in Facility A Housing Unit 1 to protect her and others from contracting Covid-19 in December 2020. *See* Compl. at 6–12. Specifically, Plaintiff claims she was informed by unidentified custody staff on December 5, 2020, that multiple inmates on Facility A, Housing Unit 1 had tested positive for Covid-19. *Id.* at 6. At the time, Plaintiff claims RJD "only had cloth face mask[s]" and failed to exchange them once soiled, provided inadequate cleaning supplies, failed to implement social distancing measures, allowed inmates who refused Covid-19 testing and who reported feeling sick to work in the central kitchen and distribute food trays throughout the housing units, and required inmates to congregate in pill lines instead of requiring nurses to "pack and pass" medication for in-cell delivery. *Id.* at 6–9. Plaintiff alleges she personally complained to Defendant Benyard about the lack of and/or failure to enforce CDC and Covid-19 safety protocols, and Benyard ensured her he would notify Defendants Pollard, Buckel, and Garcia of Plaintiff's concerns. *Id.* at 7, 8. After inmates were issued KN-95 masks on or about December 13, 2022, but required to wear them even if damaged or soiled for weeks at "the height of the outbreak," Plaintiff alleges she and several fellow inmates again complained, but this time to Defendant Garcia. *Id.* at 8. Plaintiff alleges Garcia explained that inmates and staff "had a right to refuse" testing, and said he would "look into the matter, but no corrective actions were ever taken." *Id.* at 8. When Plaintiff asked

///
///

LVN Locke[3] why "pack and pass" medication distribution had not been implemented, Locke said it was due to SRN Cohen's failure to "declare the Covid-19 outbreak an emergency." *Id.* at 8–9. Plaintiff further alleges an unidentified member of the custody staff told her while in the "pill line" that Defendants Pollard and Buckel "never even developed an emergency action plan [in case] there was a Covid-19 outbreak at RJD[.]" *Id.* at 10.

On December 17, 2020, Plaintiff tested positive for Covid-19 and was told she would "being put on isolation status." *Id.* at 9. At the time, Plaintiff claims 30 other inmates who had previously tested positive were also on isolation status, but none, including Plaintiff were moved. Instead, Plaintiff claims she and others were instead quarantined in their current cells. *Id.* When Plaintiff reported difficulty breathing, severe asthma attacks, vomiting, and headaches to the nursing staff, she claims they only "t[ook] [her] temperature and vital signs." *Id.* at 9. "No other treatment was ever provided or offered," and when Plaintiff inquired why her vitals were not being checked daily, she was told she was "not on the list." *Id.* When unidentified custody noticed she was in respiratory distress and was coughing up fluid, they radioed for a Triage and Treatment Area ("TTA") emergent response team; however, an unidentified TTA nurse informed Plaintiff there was no bed space, and instructed her to lay on her bunk, "try to get the fluid out of her lungs," and to "ride it out." *Id.* at 11.

When Plaintiff filed a CDCR Health Care Appeal Form 602-HC "to try to obtain medical treatment," to get "medical to follow [] Covid-19 policies," and to report the "imminent risk to [her] health and safety" posed by her infection and the "ongoing refusal" of Defendants Pollard, Buckel, Garcia, Glynn, and Cohen to follow Covid-19 protocols, her appeal was classified as a "regular, non-emergency appeal." *Id.* at 9–10.

---

[3] LVN Locke is not named as a Defendant.

Plaintiff claims this further endangered her health because "she could have died from not receiving medical treatment as so many other inmates did." *Id.* at 10.

In fact, Plaintiff alleges Defendants Pollard, Buckel, Benyard, and Garcia "continued to act with deliberate indifference and a wanton disregard of [her] health and safety by failing to correct the problems when they knew about them," "even [held] a food-sale fundraiser in the middle of the outbreak," and "allow[ed] outside visitors to come into RJD and pass out food." *Id.* She further contends SRN Cohen "began to fabricate documents and medical records to make it look as if inmates were refusing Covid-19 medical treatment." *Id.* at 12.

### 3.    Count 3

In Count 3, Plaintiff switches gears and focuses on Defendant Allison, Gibson, Pollard, Benyard, and Buckel's alleged violations in 2019 of her First Amendment right to free exercise and her Fourteenth Amendment right to equal protection in the practice of her Wiccan faith.[4] *See id.* at 13–16.

Specifically, during the week of December 22–28, 2019, and between the hours of 11:30 a.m. to 1:00 p.m., when all inmates are restricted to their cells unless participating in the Enhanced Outpatient Program, at recreational therapy, or on C-status, Plaintiff contends Defendants Pollard, Benyard, and Buckel authorized the Protestant Services Praise and Worship Team to enter all 5 housing units in Facility A and to "us[e] band instruments and microphones" to perform Christian worship songs. *Id.* at 13. On December 24, 2019, Plaintiff contends the songs, beginning with *Amazing Grace*, were

---

[4] "The Federal Rules of Civil Procedure permit a party to 'join, as independent or alternative claims, as many claims as it has against an opposing party.'" *Garity v. APWU Nat'l Lab. Org.*, 828 F.3d 848, 855 n.5 (9th Cir. 2016) (quoting Fed. R. Civ. P. 18(a)). "Once a party properly asserts its first claim, it may use that as a platform to assert any other claim—related or unrelated—against that particular opposing party." *See* 1 S. Gensler, FEDERAL RULES OF CIVIL PROCEDURE, RULES AND COMMENTARY, Rule 18, at 479 (2018).

"so loud that [they] drowned out [her] television," and could be heard through her headphones. *Id.* Plaintiff claims she requested to be released to the outdoor religious grounds for the duration, but was denied and "forced to 'attend'" this Christian worship service against her will" and in violation of the First Amendment. *Id.*

Plaintiff further alleges more generally that Defendants Allison, and Gibson changed CDCR policy with respect to religious practice groups so that any religion can use the same outdoor religious grounds and locker space for sacred items. *Id.* at 14. As a well-documented Wiccan practitioner, Plaintiff claims the multi-faith use of these grounds and lockers desecrates them such that Odinists and Wiccans "cannot freely practice their respective religions." *Id.* at 14–15, 16.

Plaintiff also contends that while some beliefs are similar, Odinist and Wiccans "do not practice the same," yet Defendants Allison, Gibson, Pollard, Buckel, and Benyard "actively discriminate" against them by "lump[ing]" the pagan traditions together, "routinely cancelling their religious services," and denying approval for religious holidays and banquets, wheelchair access, and the tools to care for their outdoor religious spaces. *Id.* at 15–16. Plaintiff claims these policies violate both her First Amendment right to free exercise of her faith, and her Fourteenth Amendment right to equal protection because Defendants do not similarly "force all of the different Christian religious groups to attend service together," routinely allow Christian religious services, and do not require Native Americans to share their ground keeping tools or sweat lodges. *Id.* at 15.

  C. <u>Discussion</u>

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Naffe v. Frye*, 789 F.3d 1030, 1035–36 (9th Cir. 2015).

/ / /

As currently pleaded and liberally construed, the Court finds Plaintiff's Complaint contains plausible First, Eighth, and Fourteenth Amendment free exercise, cruel and unusual punishment, and equal protection claims "sufficient to warrant ... an answer." *Wilhelm*, 680 F.3d at 1123; 28 U.S.C. §§ 1915(e)(2), 1915A(b). *See also Helling v. McKinney*, 509 U.S. 25, 33 (1993) (prison officials may not "be deliberately indifferent to the exposure of inmates to a serious, communicable disease"); *Hutto v. Finney*, 437 U.S. 678, 682–83 (1978) (affirming a finding of an Eighth Amendment violation where a facility housed individuals in crowded cells with others suffering from infectious diseases, such as Hepatitis and venereal disease, and the individuals' "mattresses were removed and jumbled together each morning, then returned to the cells at random in the evening"); *Andrews v. Cervantes*, 493 F.3d 1047, 1050 (9th Cir. 2007) (recognizing a cause of action under the Eighth Amendment and 42 U.S.C. § 1983 for an alleged policy of not screening inmates for infectious diseases—HIV, Hepatitis C, and Heliobacter pylori—and for housing contagious and healthy individuals together during a known "epidemic of hepatitis C"); *Maney v. Hall*, 516 F. Supp. 2d 1161, 1179 (D. Or. Feb. 2, 2021) (citing cases recognizing prison officials' duty to protect inmates from exposure to communicable diseases under the Eighth Amendment); *Hartmann v. Cal. Dept. of Corr. and Rehab.*, 707 F.3d 1114, 1122–24 (9th Cir. 2013) (discussing pleading requirements for prisoner's First Amendment free exercise and Fourteenth Amendment equal protection claims); *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994) (to implicate the Free Exercise Clause, a prisoner must allege that the belief at issue is both "sincerely held" and "rooted in religious belief."); *Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008) (noting that the "sincerity test," not the "centrality test," applies to a free exercise analysis); *Jones v. Williams,* 791 F.3d 1023, 1031–32 (9th Cir. 2015) (a free exercise claim in the prison context requires a plausible allegation that a government action substantially burdens plaintiff's practice of his religion).

Based on these precedents, the Court will direct the U.S. Marshal to effect service upon the Defendants on Plaintiff's behalf. *See* 28 U.S.C. § 1915(d) ("The officers of the

court shall issue and serve all process, and perform all duties in [IFP] cases."); Fed. R. Civ. P. 4(c)(3) ("[T]he court may order that service be made by a United States marshal or deputy marshal . . . if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915.").[5]

### III.     Conclusion and Orders

For the reasons discussed, the Court:

1)     **GRANTS** Plaintiff's Motion to Proceed IFP (ECF No. 2).

2)     **DIRECTS** the Secretary of the CDCR, or her designee, to collect from Plaintiff's trust account the $350 filing fee owed in this case by garnishing monthly payments from her account in an amount equal to twenty percent (20%) of the preceding month's income and forwarding those payments to the Clerk of the Court each time the amount in the account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). ALL PAYMENTS SHALL BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

3)     **DIRECTS** the Clerk of the Court to serve a copy of this Order by U.S. Mail on Kathleen Allison, Secretary, California Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, California, 94283-0001, or in the alternative by forwarding an electronic copy to trusthelpdesk@cdcr.ca.gov.

4)     **DIRECTS** the Clerk to issue a summons as to Plaintiff's Complaint (ECF No. 1) and forward it to Plaintiff along with a blank U.S. Marshal Form 285 for Defendants Allison, Gibson, Pollard, Buckel, Benyard, Garcia, Glynn, and Cohen. In addition, the Clerk will provide Plaintiff with a certified copy of this Order, a certified copy of her Complaint, and the summons so that she may serve these Defendants. Upon

---

[5] Plaintiff is cautioned that "the *sua sponte* screening and dismissal procedure is cumulative of, and not a substitute for, any subsequent Rule 12(b)(6) motion that [a defendant] may choose to bring." *Teahan v. Wilhelm*, 481 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007).

receipt of this "IFP Package," Plaintiff must complete the USM Form 285s as completely and accurately as possible, *include an address where each Defendant may be found and/or subject to service*, and return them to the United States Marshal according to the instructions the Clerk provides in the letter accompanying her IFP package.

5) **ORDERS** the U.S. Marshal to serve a copy of the Complaint and summons upon Defendants Allison, Gibson, Pollard, Buckel, Benyard, Garcia, Glynn, and Cohen as directed by Plaintiff on the USM Form 285s provided to her, and file executed waivers of personal service upon each Defendant with the Clerk of Court as soon as possible after their return. Should any Defendant fail to return the U.S. Marshal's request for waiver of personal service, the U.S. Marshal shall instead file the completed Form USM 285 Process Receipt and Return with the Clerk of Court, include the date the summons, Complaint, and request for waiver was mailed to that Defendant, and note that service upon that party remains unexecuted. All costs of U.S. Marshal service will be advanced by the United States; however, if a Defendant located within the United States fails, without good cause, to sign and return the waiver requested by the Marshal on behalf of Plaintiff, the Court will impose upon the Defendant any expenses later incurred in making personal service. *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3), (d)(2).

6) **ORDERS** Defendants Allison, Gibson, Pollard, Buckel, Benyard, Garcia, Glynn, and Cohen, once served, to reply to Plaintiff's Complaint, *and any subsequent pleading Plaintiff may file in this matter in which they are named as parties*, within the time provided by the applicable provisions of Federal Rule of Civil Procedure 12(a) and 15(a)(3). *See* 42 U.S.C. § 1997e(g)(2) (while a defendant may occasionally be permitted to "waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983," once the Court has conducted its sua sponte screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b), and thus, has made a preliminary determination based on the face on the pleading alone that Plaintiff has a "reasonable opportunity to prevail on the merits," defendant is required to respond).

///

12

3:22-cv-00377-CAB-MDD

7) **ORDERS** Plaintiff, after service has been effected by the U.S. Marshal, to serve upon Defendants Allison, Gibson, Pollard, Buckel, Benyard, Garcia, Glynn, and Cohen, or if appearance has been entered by counsel, upon Defendants' counsel, a copy of every further pleading, motion, or other document submitted for the Court's consideration pursuant to Fed. R. Civ. P. 5(b). Plaintiff must include with every original document he seeks to file with the Clerk of the Court, a certificate stating the manner in which a true and correct copy of that document has been was served on Defendants or their counsel, and the date of that service. *See* S.D. Cal. CivLR 5.2.

**IT IS SO ORDERED**.

Dated: July 8, 2022

Hon. Cathy Ann Bencivengo
United States District Judge